UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| PETER DERRER, Derivatively on Behalf of TEREX CORPORATION, | ) ) ) | Case No.: 3:10-cv-00550-RNC |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| RONALD M. DEFEO, PHILLIP C. WIDMAN, THOMAS J. RIORDAN, G. CHRIS ANDERSEN, DONALD P. JACOBS, DAVID A. SACHS, WILLIAM H. FIKE, DONALD DEFOSSET, HELGE H. WEHMEIER, PAULA H.J. CHOLMONDELEY, OREN G. SHAFFER, THOMAS J. HANSEN, and DAVID C. WANG, | ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants, | ) ) | |
| and | ) ) | |
| TEREX CORPORATION, a Delaware corporation, | ) ) ) | |
| Nominal Defendant. | ) ) | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF SETTLEMENT**

# TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................................1

II.     OVERVIEW OF THE LITIGATION ....................................................................3

        A.      Factual Summary and Procedural History ...........................................3

        B.      The Parties' Settlement Negotiations ...................................................4

        C.      Approval of Settlement by Terex .........................................................5

III.    THE SETTLEMENT TERMS...............................................................................5

IV.     STANDARDS FOR PRELIMINARY APPROVAL OF THE SETTLEMENT...............10

V.      THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL ...............................12

        A.      The Settlement Merits a Presumption of Fairness Because It Is the Product
                of Arm's-Length Negotiations by Experienced and Well-Informed Counsel........13

        B.      The Settlement Confers Valuable Benefits upon Terex and Falls Well
                Within the Range of Possible Approval................................................16

VI.     NOTICE TO TEREX STOCKHOLDERS SATISFIES THE REQUIREMENTS
        OF RULE 23.1(C) AND DUE PROCESS .......................................................22

VII.    PROPOSED SCHEDULE OF EVENTS........................................................24

VIII.   CONCLUSION....................................................................................................25

# TABLE OF AUTHORITIES

**CASES**                                                          **PAGE(S)**

*Arace v. Thompson*,
    No. 08 CIV. 7905 (DC), 2011 U.S. Dist. LEXIS 93105 (S.D.N.Y. Aug.
    17, 2011) .................................................................................................22

*Arbuthnot v. Pierson*,
    607 F. Appx. 73 (2d Cir. 2015).................................................................13

*Brooks v. Am. Exp. Indus., Inc.*,
    No 71 Civ. 5128, 1977 U.S. Dist. LEXIS 17313 (S.D.N.Y. Feb. 17, 1977) ...................13

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974).....................................................................11

*City of Providence v. Aéropostale, Inc.*,
    No. 11 Civ. 7132 (CM), 2014 U.S. Dist. LEXIS 64517 (S.D.N.Y. May 9,
    2014) .......................................................................................................13

*Cohn v. Nelson*,
    375 F. Supp. 2d 844 (E.D. Mo. 2005)...............................................16, 18

*D'Amato v. Deutsche Bank*,
    236 F.3d 78 (2d Cir. 2001).......................................................................14

*Espinoza v. Dimon*,
    790 F.3d 125 (2d Cir. 2015).....................................................................19

*Grant v. Bethlehem Steel Corp.*,
    823 F.2d 20 (2d Cir. 1987).......................................................................21

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983).................................................................................16

*In re Apollo Grp., Inc. Sec. Litig.*,
    No. CV 04-2147-PHX-JAT, 2008 WL 3072731 (D. Ariz. Aug. 4, 2008),
    *rev'd & remanded*, No. 08-6971, 2010 WL 5927988
    (9th Cir. June 23, 2010) ...........................................................................21

*In re Austrian & German Bank Holocaust Litig.*,
    80 F. Supp. 2d 164 (S.D.N.Y. 2000)........................................................14

*In re Caremark Int'l Inc. Derivative Litig.*,
    698 A.2d 959 (Del. Ch. 1996)..................................................................20

*In re Currency Conversion Fee Antitrust Litig.*,
  No. MDL No. 1409, 2006 U.S. Dist. LEXIS 81440 (S.D.N.Y. Nov. 8,
  2006) ........................................................................................................................11

*In re Drexel Burnham Lambert Group Inc.*,
  995 F.2d 1138 (2d Cir. 1993)...................................................................................24

*In re Elan Sec. Litig.*,
  385 F. Supp. 2d 363 (S.D.N.Y. 2005)......................................................................14

*In re Lear Corp. S'holder Litig.*,
  967 A.2d 640 (Del. Ch. 2008)...................................................................................20

*In re Lloyd's Am. Trust Fund Litig.*,
  No. 96 Civ. 1262 (RWS), 2002 U.S. Dist. LEXIS 22663 (S.D.N.Y. Nov.
  26, 2002) ....................................................................................................................21

*In re Metro. Life Derivative Litig.*,
  935 F. Supp. 286 (S.D.N.Y. 1996).....................................................................21, 23

*In re NASDAQ Market-Makers Antitrust Litig.*,
  176 F.R.D. 99 (S.D.N.Y. 1997) .........................................................................11, 12

*In re NeuStar, Inc. Sec. Litig.*,
  No. 1:14cv885, 2015 U.S. Dist. LEXIS 165320 (E.D. Va. Dec. 8, 2015)..........14, 15

*In re NVIDIA Corp. Derivative Litig*,
  Master File No. C-06-06110-SBA (JCS), 2009 U.S. Dist. LEXIS 24973
  (N.D. Cal. Mar. 18, 2009) .........................................................................................16

*In re PaineWebber Ltd. P'ships Litig.*,
  171 F.R.D. 104 (S.D.N.Y. 1997) .............................................................................14

*In re Pfizer Inc. S'holder Derivative Litig.*,
  780 F. Supp. 2d 336 (S.D.N.Y. 2011)............................................................12, 16, 19

*In re Prudential Sec. Inc. P'ships Ltd. Litig.*,
  163 F.R.D. 200 (S.D.N.Y. 1995) .............................................................................11

*In re Telik, Inc. Sec. Litig.*,
  576 F. Supp. 2d 570 (S.D.N.Y. 2008).......................................................................13

*In re Walt Disney Co. Derivative Litigation*,
  907 A.2d 693 (Del. Ch. 2005), *aff'd*, 906 A.2d 27 (Del. 2006) .........................20

*Kamen v. Kemper Fin. Servs. Inc.*,
  500 U.S. 90 (1991)....................................................................................................19

*Lewis v. Anderson*,
    477 A.2d 1040 (Del. 1984) .........................................................................19

*Maher v. Zapata Corp.*,
    714 F.2d 436 (5th Cir. 1983) .................................................................16, 19

*Marsden v. Select Med. Corp.*,
    No. 04 Civ. 4020, 2005 U.S. Dist. LEXIS 714 (E.D. Pa. Jan. 18, 2005) .........................22

*Mills v. Elec. Auto-Lite Co.*,
    396 U.S. 375 (1970).................................................................................16

*Milstein v. Werner*,
    57 F.R.D. 515 (S.D.N.Y. 1972) ...................................................................18

*Mullane v. Cent. Hanover Bank & Trust Co.*,
    339 U.S. 306 (1950)...............................................................................22

*Republic Nat'l Life Ins. Co. v. Beasley*,
    73 F.R.D. 658 (S.D.N.Y. 1977) ...................................................................10

*Schimmel v. Goldman*,
    57 F.R.D. 481 (S.D.N.Y. 1973) ...................................................................10

*State of West Virginia v. Chas. Pfizer & Co.*,
    314 F. Supp. 710 (S.D.N.Y. 1970), *aff'd*, 440 F.2d 1079 (2d Cir. 1971) .........................12

*Unite Nat'l Ret. Fund v. Watts*,
    No. 04-CV-3603 (DMC), 2005 U.S. Dist. LEXIS 26246 (D.N.J. Oct. 28,
    2005) ...............................................................................................17

*Weinberger v. Kendrick*,
    698 F.2d 61 (2d Cir. 1982)........................................................................13

*Zapata Corp. v. Maldonado*,
    430 A.2d 779 (Del. 1981) .........................................................................13

**STATUTES, RULES & OTHER AUTHORITIES**

Alba Conte & Herbert Newberg, *Newberg on Class Actions* §22.110 (4th ed.
    2002) ...............................................................................................10

Del. Code Ann. Tit. 8 .................................................................................20

Delaware Chancery Court Rules, Rule 23.1 .........................................................19

Fed. R. Civ. P. 23.1(c) ...............................................................................10

5 James W. Moore, *Moore's Federal Practice* 23.83[1] (3d ed. 2002)...............................11

*Manual for Complex Litigation* (4th ed. 2004)......................................................................10, 11

*Manual for Complex Litigation, Third*.........................................................................................12

The Vladimir Gusinsky Revocable Trust ("Plaintiff" or the "Trust"),[1] by and through its undersigned counsel ("Plaintiff's Counsel"), respectfully submits this Unopposed Motion for Preliminary Approval of Settlement (the "Motion") of this stockholder derivative action (the "Action") brought on behalf of nominal defendant Terex Corporation ("Terex" or the "Company") against certain of its current and former directors and officers (the "Individual Defendants").[2] All capitalized terms not defined herein shall have the same meaning as set forth in the Stipulation dated July 31, 2019, and filed as Exhibit A to the Declaration of Ashley R. Rifkin in Support of Plaintiff's Unopposed Motion for Preliminary Approval of Settlement ("Rifkin Decl."), filed concurrently herewith.

## I.      INTRODUCTION

Following extensive good faith and arm's-length negotiations, the parties to the Action have agreed to the Settlement, which fully resolves and settles the Released Claims. The Settlement requires Terex to maintain for a period of at least four (4) years a significant package of corporate governance reforms and internal controls enhancements (the "Governance Reforms"). The Governance Reforms confer substantial benefits on Terex and will help prevent future damage to the Company of the type alleged in this litigation.

After the material substantive terms of the Settlement were determined and agreed upon, Plaintiff's Counsel and counsel for Defendants separately negotiated the attorneys' fees and

---

[1] In connection with the Stipulation and Agreement of Settlement dated July 31, 2019 (the "Stipulation" or "Stip."), and solely for purposes of effectuating the Settlement, the Parties agree that the Trust should be substituted in as the plaintiff in this derivative litigation, and that the Trust shall serve as the representative plaintiff going forward. Stip. at 2 n.2.

[2] This Motion was provided to the nominal defendant Terex and the Individual Defendants (together, "Defendants") prior to its filing and they have informed Plaintiff that they do not oppose the relief requested in the Motion.

expenses to be paid to Plaintiff's Counsel in recognition of the substantial benefits conferred on the Company. Following those arm's-length negotiations, Terex agreed to cause its insurer to pay Plaintiff's Counsel attorneys' fees and expenses in the amount of $350,000 (the "Fee and Expense Amount"), subject to Court approval.[3] The Terex Board, including each of its independent, non-defendant directors, has approved the Settlement and each of its terms as being in the best interests of Terex and its stockholders. The Board, including each of its independent, non-defendant directors, also has acknowledged and agrees that the Settlement is fair, reasonable, and adequate, and confers substantial benefits upon Terex and its stockholders.

At the preliminary approval stage, the Court need only determine that the proposed Settlement is within the range of what might be found to be fair, reasonable, and adequate, such that notice of the Settlement should be provided to Terex Stockholders and a hearing scheduled for consideration of final settlement approval. The proposed Settlement plainly meets this standard. In addition, the proposed schedule and notice are adequate to apprise stockholders of the Settlement's terms and to afford them a fair opportunity to submit objections, if any. Accordingly, Plaintiff respectfully requests that the Court: (i) preliminarily approve the Settlement set forth in the Stipulation; (ii) approve the form of the Notice and Summary Notice, and direct that they be published and posted in the time and manner described in the Stipulation; and (iii) schedule a hearing to consider final approval of the Settlement and objections, if any, by Terex Stockholders (the "Settlement Hearing").

---

[3] At this stage of the settlement approval process, the Court is not being asked to evaluate or approve the agreed Fee and Expense Amount beyond determining that the Settlement as a whole falls within a range that might be approved as fair and reasonable, such that notice should issue to Terex Stockholders and a hearing should be set for final settlement review and approval.

## II.    OVERVIEW OF THE LITIGATION

### A.    Factual Summary and Procedural History

Terex, a Delaware corporation, is a global manufacturer of aerial work platforms, cranes, and materials processing machinery. Terex also designs, builds, and supports products used in construction, maintenance, manufacturing, energy, minerals, and materials management applications.

This derivative litigation was commenced on April 12, 2010, pleading claims for violations of sections 10(b) and 20(a) of the Securities and Exchange Act of 1934, breaches of fiduciary duty, waste of corporate assets, and unjust enrichment against certain directors and officers of Terex. ECF No. 1; Stip., ¶C. More specifically, the complaint in this Action alleges that the defendants sought to conceal Terex's exposure to the economic downturn beginning in late 2007 by making and authorizing Terex to make false and misleading statements and causing the Company to repurchase its own stock at artificially inflated levels. The complaint alleges that the false and misleading statements and stock repurchases misled stockholders into believing that the Company's diverse businesses would insulate it from the economic downturn. The complaint alleges that the defendants knew that Terex was not insulated from the economic downturn and, in fact, was subject to the risk that customers would stop making, cancel, and defer orders, providing the Company without any sales to meet its lofty earnings guidance.

The complaint alleges that beginning in August 2008, the truth regarding the Company's business prospects started to trickle out when the Company lowered its earnings guidance and ceased repurchasing stock. The Company would continue to lower its earnings guidance on three more occasions throughout 2008 and into 2009, until it eventually deciding to stop providing earnings guidance altogether. The complaint alleges that, when the truth about the

Company's business prospects was disclosed, Terex's market capitalization was devastated, and the Company was named as a defendant in numerous class actions alleging violations of the federal securities laws.

On July 1, 2010, pursuant to a stipulation entered into among the parties in furtherance of the interests of efficiency and judicial economy, the Court stayed this Action pending the Court's resolution of a motion to dismiss the related Securities Class Action. ECF Nos. 30 and 32; Stip., ¶D. On March 31, 2018, the Court granted in part and denied in part the defendants' motion to dismiss the complaint in the Securities Class Action. Stip., ¶E.

On December 4, 2018, Plaintiff's Counsel filed a motion to substitute the Trust as the representative plaintiff in this Action. ECF No. 41; Stip., ¶F. Defendants filed a memorandum in opposition to that motion on January 17, 2019. ECF No. 51; Stip., ¶F. On March 7, 2019, Plaintiff's Counsel sent a letter to the Court on behalf of all Parties to inform the Court that the Parties had commenced good faith settlement discussions and to request that the time for filing the Trust's reply brief in support of the motion to substitute be held in abeyance while the parties continued their settlement discussions. ECF No. 59; Stip., ¶G. The Court so-ordered on March 8, 2019. ECF No. 60.

The parties in the related Securities Class Action agreed to a settlement on March 27, 2019. All money used to settle the Securities Class Action was paid by Terex's insurer, not by the Company itself.

B.     **The Parties' Settlement Negotiations**

Plaintiff's Counsel sent a settlement demand to Defendants' counsel on March 1, 2019, proposing a settlement framework that included, *inter alia*, various corporate governance reforms. Throughout March and April 2019, counsel for Plaintiff and Defendants negotiated

potential settlement terms and conditions. Stip., ¶H. On April 12, 2019, counsel for the parties reached an agreement in principle on the substantive consideration for a proposed settlement of the Action. *Id.*

Following the parties' agreement in principle on the substantive consideration for a proposed settlement, the parties separately negotiated the attorneys' fees that would be payable, subject to the approval of the Court, in consideration of the substantial corporate benefit produced by the Action and the proposed Settlement. Stip., ¶I. On July 11, 2019, the Settling Parties reached agreement on an amount of attorneys' fees and expenses. *Id.* The Settling Parties did not discuss or negotiate the amount of any attorneys' fees and expenses to be paid to Plaintiff's Counsel until after the other material terms of the settlement had been agreed upon on April 12, 2019. *Id.*

### C.  Approval of Settlement by Terex

The Board, including each of its independent, non-defendant directors, has approved the Settlement and each of its terms as being in the best interests of Terex and its stockholders. Stip., ¶3. The Board, including each of its independent, non-defendant directors, also has acknowledged and agrees that the Settlement is fair, reasonable, and adequate, and confers substantial benefits upon Terex and its stockholders. *Id.*

## III.  THE SETTLEMENT TERMS

The proposed Settlement is an excellent result, reached after extensive, arm's-length negotiations. Within ninety (90) days of issuance of a final order approving the settlement of this action, Terex's Board will adopt resolutions and amend Board committee charters and other governing documents to ensure the adoption, implementation and maintenance of the

Governance Reforms, which shall remain in effect for not less than four (4) years from entry of an order finally approving the Settlement. Stip., ¶2.

Terex acknowledges that the pendency, prosecution, and settlement of the Action and the litigation efforts of Plaintiff, former plaintiff Peter Derrer, and Plaintiff's Counsel were the primary factor in the Board's decision to adopt, implement, and maintain the following Governance Reforms:

    **A.**    <u>**Chief Ethics and Compliance Officer**</u>: The duties and responsibilities of the Chief Ethics and Compliance Officer will be formalized and amended as follows:

    1.     The Chief Ethics and Compliance Officer shall be primarily responsible for managing the Company's ethics and compliance program and for assisting the Board in fulfilling its oversight duties with regard to the Company's compliance with applicable laws, regulations and accounting standards, and the dissemination of true and accurate information. In this regard, the Chief Ethics and Compliance Officer shall have access directly to the Governance and Nominating Committee and the Audit Committee, and work with other Board committees as necessary, to facilitate the Board's oversight responsibilities. The position of Chief Ethics and Compliance Officer must at all times be occupied by the General Counsel or another individual with executive-level qualifications and experience sufficient for the position.

    2.     The responsibilities and duties of the Chief Ethics and Compliance Officer shall expressly include, without limitation, the following:

    (i)     Working with the CEO, General Counsel and the Governance and Nominating Committee to evaluate and define the goals of the Company's ethics and compliance program in light of trends and changes in laws which may affect the Company's compliance with laws relating to disclosure of the Company's risk exposure;

    (ii)     Managing and overseeing the Company's ethics and compliance program, implementing policies, procedures and related activities to prevent illegal, unethical and improper conduct, implementing procedures for monitoring and evaluating the program's performance, and communicating with and informing the Governance and Nominating Committee regarding progress toward meeting program goals;

    (iii)     Advising the Governance and Nominating Committee and the Audit Committee and acting as the liaison among the executive officers, the Board, and the Governance and Nominating Committee and the Audit Committee, in which capacity the Chief Ethics and Compliance Officer shall: (i) be primarily responsible for assessing organizational risk for misconduct and noncompliance with applicable laws and regulations; (ii) report material risks relating to compliance issues to the Governance and Nominating Committee and/or the Audit Committee as appropriate; and (iii) make written recommendations for further evaluation and/or remedial action;

        (iv)      Preparing quarterly written reports to the Governance and Nominating Committee and the Audit Committee evaluating material risks concerning the Company's regulatory compliance, and where necessary, recommending remedial action;

        (v)      Working with the Company's General Counsel and the Audit Committee to evaluate discuss regulatory compliance – this includes meeting with the General Counsel and the Audit Committee each quarter to discuss ongoing and potential compliance issues; and

        (vi)      Overseeing employee compliance training.

        3.      Terex shall outline the duties and responsibilities of the Chief Ethics and Compliance Officer publicly on the Company's website.

        **B.**      **Disclosure Committee:** The Disclosure Committee Charter will be revised to provide that the Disclosure Committee shall be responsible for:

        (i)      Assisting in the design of disclosure controls and other procedures;

        (ii)      Evaluating the effectiveness of the Company's disclosure controls and procedures as of the end of each year-end, with the Audit Committee and the Company's external auditors, if the Audit Committee deems necessary;

        (iii)      Evaluating the materiality of information and events relating to or affecting the Company, and determining the timing and appropriate method of disclosure of information deemed material;

        (iv)      Reviewing in advance, in conjunction with the Audit Committee, the Company's quarterly earnings press releases and related materials to determine the adequacy and accuracy of the disclosures included therein;

        (v)      Evaluating the Company's public disclosures and disclosure-related internal controls;

        (vi)      Reviewing in advance, in conjunction with the Audit Committee, each Form 10-K and Form 10-Q, filed by the Company with the Securities and Exchange Commission, and each Annual Report to stockholders, to determine the adequacy and accuracy of the disclosures included therein; and

        (vii)      Undertaking other duties or responsibilities as the Company's CEO, CFO, and Audit Committee, together, determine is necessary or desirable.

        4.      The Company shall post the Disclosure Committee Charter on its website.

        **C.**      **Audit Committee:** The Audit Committee Charter shall be amended to include the following duties and responsibilities:

1.     The Audit Committee shall annually review the overall plan for the Company's audit as proposed by the independent auditors, including the scope of the examination to be performed, the assistance to be provided by the internal auditors, and any developments in accounting principles and auditing standards that may affect either the financial statements or the audit.

2.     The Audit Committee shall annually review and evaluate: (i) the scope and results of the internal audit program; (ii) the internal auditing compliance with appropriate audit standards; (iii) the independent auditors' performance, including the qualifications, performance, and independence of the lead audit partner assigned to the engagement, taking into account the opinions of management and the Company's internal audit personnel; and (iv) its own performance, as well as those of its individual members.

3.     The Audit Committee shall promptly report to the Board on any issues that arise with respect to the quality or integrity of the Company's financial statements, the Company's compliance with applicable accounting standards and related regulatory requirements, the performance and independence of the Company's independent auditors, and the performance of the internal audit function.

4.     At least annually, the Audit Committee shall review all critical issues impacting the Company's recognition of revenue.

5.     The Audit Committee shall be responsible for, among other things, monitoring key areas of financial/accounting compliance and relevant trends, and identifying, assessing and managing risk exposures of the Company, including the risks represented by failing to recognize proper accounting treatments, and the failure of management to timely disclose material accounting information to the public.

6.     The Audit Committee as a whole shall annually perform a self-assessment of the committee's performance. This self-assessment shall include consideration of such factors as: (i) attendance at Board and committee meetings; (ii) preparedness for Board and committee meetings; (iii) participation at Board and committee meetings; and (v) candor toward other directors, management, and professionals retained by the Company.

**D.**    **Governance and Nominating Committee:** The Company will amend the Governance and Nominating Committee Charter to require Terex's Chief Ethics and Compliance Officer (or General Counsel or other designee in his/her absence) to provide a report on ethics and compliance matters at each regularly scheduled meeting of the Committee. The reports from the Chief Ethics and Compliance Officer (or General Counsel or other designee in his/her absence) shall, at a minimum, include a discussion of any material risks concerning the Company's regulatory compliance and the Chief Ethics and Compliance Officer's evaluation of and, where necessary, recommendations for remedial action.

**E.**    **On-Site Visits:** In order to help to educate the Company's directors regarding the culture and to provide them a better understanding of the business, the Company shall amend its Corporate Governance Guidelines to recommend that directors visit a Company location at least once per year.

**F.** **Management Assessment of Internal Controls:** Management shall annually assess the adequacy of the Company's internal controls, and shall report in the Company's Annual Report on Form 10-K any identified material weaknesses.

**G.** **Board Committee Chair Rotation:** Terex shall require committee chairs and the position of Lead Director to be formally considered for rotation at least annually. The Board's annual considerations and decisions concerning rotations of committee chairs and the Lead Director shall be summarized and recorded in Board meeting minutes. In addition, a director must serve on a committee for at least twelve (12) months before becoming chair of that committee, absent extraordinary circumstances as determined by the Board in a good faith exercise of its business judgment.

**H.** **Limitations on Additional Board Service:** The Company shall adopt a provision precluding directors from serving on more than five (5) outside boards of public companies while serving on the Terex Board.

**I.** **Board Meetings:** The Company shall adopt a provision requiring the Board to meet at least four (4) times per year.

**J.** **Say-on-Pay:** The Corporate Governance Guidelines shall be amended to expressly require an annual stockholder advisory vote on the compensation of named executive officers, i.e., a "say-on-pay" provision.

Stip., Ex. A at section A.1.-10.

Terex further acknowledges that the pendency, prosecution, and settlement of the Action and the litigation efforts of Plaintiff, former plaintiff Peter Derrer, and Plaintiff's Counsel were a factor in the Board's decision to adopt, implement, and/or maintain the Corporate Governance Measures set forth in Exhibit A at section B to the Stipulation, which include, but are not limited to: (i) a provision allowing actions by stockholders normally requiring a meeting and vote to dispense with both if the action is consented to in writing or electronic transmission by a sufficient number of stockholders; (ii) an amendment to the Company's Bylaws to eliminate the requirement that the Chairman of the Board also be the CEO, and to add the requirement that the Board elect one of its members as Chairman; and (iii) amendments to the Charters of the Audit Committee and the Governance and Nominating Committee. Stip., Ex. A.

Terex and its Board acknowledge that the Governance Reforms confer a substantial benefit upon the Company. Stip., ¶¶3-4.

## IV. STANDARDS FOR PRELIMINARY APPROVAL OF THE SETTLEMENT

It is well-settled that strong public policies favor the settlement of disputed claims, especially in complex class and shareholder derivative litigation. *Schimmel v. Goldman*, 57 F.R.D. 481, 487 (S.D.N.Y. 1973) (settlements of shareholder derivative actions particularly favored because such litigation is "notoriously difficult and unpredictable");[4] *Republic Nat'l Life Ins. Co. v. Beasley*, 73 F.R.D. 658, 667 (S.D.N.Y. 1977) (same).

Pursuant to Rule 23.1 of the Federal Rules of Civil Procedure, a derivative action "may be settled, voluntarily dismissed, or compromised only with the court's approval. Notice of a proposed settlement, voluntary dismissal, or compromise must be given to shareholders or members in the manner that the court orders." Fed. R. Civ. P. 23.1(c). "The role of the court and the criteria considered in evaluating the adequacy and fairness of a derivative settlement are substantially the same as in a class action." Alba Conte & Herbert Newberg, *Newberg on Class Actions* §22.110 at 476 (4th ed. 2002).

The procedure for the Court's review of a derivative settlement is well-established. Preliminary approval is the first of two stages that comprise the approval procedure. The Court first reviews the proposal preliminarily to determine whether it is sufficient to warrant notice to stockholders and a hearing. If so, the Court would then consider final approval of the settlement at a settlement hearing, after notice of settlement is provided to stockholders. *Manual for Complex Litigation* §13.14 at 173 (4th ed. 2004). Preliminary approval does not require the Court to answer

---

[4] Here, as throughout, all emphasis is deemed added and citations and footnotes are omitted unless otherwise noted.

the ultimate question of whether the proposed settlement is fair, reasonable, and adequate.  *Id*.

Rather, that determination is made only after notice of the settlement has been given to

stockholders and after they have been given the opportunity to comment.  5 James W. Moore,

*Moore's Federal Practice* 23.83[1] at 23-336.2 to 23-339 (3d ed. 2002).

The standards for preliminary approval are "not as stringent as those" for final approval.

*Manual for Complex Litigation* §21.632 (4th ed. 2004).  To grant preliminary approval, the Court

need only make a preliminary determination regarding the fairness, reasonableness, and

adequacy of the settlement.  *In re Prudential Sec. Inc. P'ships Ltd. Litig.*, 163 F.R.D. 200, 210

(S.D.N.Y. 1995).  The sole issue before the Court is whether the Settlement falls within the range

of what could be found to be fair, adequate, and reasonable, such that it would be appropriate to

give notice to the stockholders and schedule a hearing to consider final approval of the

Settlement.  *In re Currency Conversion Fee Antitrust Litig.*, No. MDL No. 1409, 2006 U.S. Dist.

LEXIS 81440, at *13 (S.D.N.Y. Nov. 8, 2006) (court to conduct "'a preliminary evaluation' as to

whether the settlement is fair, reasonable and adequate");  *In re NASDAQ Market-Makers*

*Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997) (preliminary approval requires only a

"preliminary evaluation of the fairness of the settlement, prior to notice").  The substantive

determination regarding whether a proposed settlement is fair, adequate, and reasonable is to be

made after notice of the settlement has been given to stockholders and after they have been given

an opportunity to voice their views regarding the settlement.  *City of Detroit v. Grinnell Corp.*,

495 F.2d 448, 456 (2d Cir. 1974).

Preliminary approval should generally be granted where, as here, the proposed settlement

appears to be the product of serious, informed, non-collusive negotiations; has no obvious

substantive deficiencies; and falls within the range of possible approval, in light of the benefits

guaranteed by the settlement and the risks, cost and delays entailed in attempting to secure a better result through continued litigation. *See NASDAQ*, 176 F.R.D. at 102 (citing *Manual for Complex Litigation*, *Third*, §30.41); *State of West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 741 (S.D.N.Y. 1970), *aff'd*, 440 F.2d 1079 (2d Cir. 1971) (preliminary fairness evaluation should balance possible "'rewards of litigation' with its 'risk and cost'" against benefits guaranteed through proposed settlement).

## V. THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL

Plaintiff respectfully submits that the proposed Settlement is well within the range of possible approval. Reference to some of the factors considered by courts in granting final approval of derivative and class action settlements lends ample support to Plaintiff's request that the Settlement be preliminary approved, i.e., is within the range of possible approval. *In re Pfizer Inc. S'holder Derivative Litig.*, 780 F. Supp. 2d 336, 340 (S.D.N.Y. 2011).

A "preliminary determination" of fairness can easily be made here because the Settlement was negotiated in good faith and at arm's-length among experienced counsel and will result in material benefits for nominal defendant Terex. Given the complexities of and challenges to the successful prosecution of the Action, and the uncertainties inherent in stockholder derivative litigation generally, the proposed Settlement eliminates the risk that Terex might not otherwise obtain any benefit or might obtain a lesser benefit. Settlement at this stage in the litigation will also limit the expense of risky and prolonged litigation, which is in the best interests of all of the Settling Parties. These reasons are more than sufficient to support Plaintiff's assertion that the Settlement is "within the range of possible approval" and should be preliminarily approved, as set forth below.

### A. The Settlement Merits a Presumption of Fairness Because It Is the Product of Arm's-Length Negotiations by Experienced and Well-Informed Counsel

In determining whether a settlement is fair, courts focus on whether the settlement was reached as a result of good faith bargaining at arm's-length without collusion. *Weinberger v. Kendrick*, 698 F.2d 61, 74 (2d Cir. 1982). Here, the Settlement was negotiated between and among experienced and sophisticated counsel and provides substantial benefits to the Company while eliminating the expense, risk, and delay inherent in such complex litigation, including the very real risk of no recovery. As the court observed in *City of Providence v. Aéropostale, Inc.*, No. 11 Civ. 7132 (CM) (GWG), 2014 U.S. Dist. LEXIS 64517 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. Appx. 73 (2d Cir. 2015), an "initial presumption of fairness and adequacy applies here because the Settlement was reached by experienced, fully-informed counsel after arm's-length negotiations.…" *Id.* at *11-12; *see also In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 576 (S.D.N.Y. 2008) ("a strong presumption of fairness" attaches to settlements negotiated at arm's-length by experienced counsel).

Moreover, exercise of independent business judgment by directors is traditionally afforded significant deference by courts. *See Zapata Corp. v. Maldonado*, 430 A.2d 779, 782 (Del. 1981); *Brooks v. Am. Exp. Indus., Inc*., No 71 Civ. 5128, 1977 U.S. Dist. LEXIS 17313, at *10 (S.D.N.Y. Feb. 17, 1977) ("The Court is of the view that in this case, the decision of the AEI board to approve this settlement is appropriately afforded certain deference; it is a business judgment with presumptive validity."). Here, the Terex Board, including each of its independent, non-defendant directors, has approved the Settlement and each of its terms as being in the best interests of Terex and its stockholders. Stip., ¶3. The Board, including each of its independent, non-defendant directors, also has acknowledged and agrees that the Settlement is fair, reasonable, and adequate, and confers substantial benefits upon Terex and its stockholders. *Id.*

Significant weight also should be attributed to the belief of experienced counsel that settlement is in the best interest of those affected by the settlement. *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997) ("'[G]reat weight' is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation."); *In re Elan Sec. Litig.*, 385 F. Supp. 2d 363, 369 (S.D.N.Y. 2005) (finding a presumption of fairness where "'the Court finds that the Settlement is the product of arm's length negotiations conducted by experienced counsel knowledgeable in complex class litigation'") (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 173-74 (S.D.N.Y. 2000), *aff'd sub nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001)). Plaintiff's Counsel, Robbins Arroyo LLP, has tremendous experience in shareholder derivative litigation. *See* Rifkin Decl., Ex. B. As a result, Plaintiff's Counsel has unique insight into the legal and factual issues presented here, the strengths and weaknesses of the case, the challenges to establishing and recovering damages, and the benefits conferred in the form of corporate governance and internal control reforms. *In re NeuStar, Inc. Sec. Litig.*, No. 1:14cv885 (JCC/TRJ), 2015 U.S. Dist. LEXIS 165320, at *11-12 (E.D. Va. Dec. 8, 2015) (where, as here, Plaintiff's Counsel are "'nationally recognized members of the securities litigation bar,'" the Court "may pay heed to [Plaintiff's] Counsel's judgment in approving, negotiating, and entering into a putative settlement").

In addition, Plaintiff and its counsel acted on an informed basis in negotiating the Settlement. Plaintiff, by and through Plaintiff's Counsel, thoroughly considered the facts and law underlying the Action and have conducted an extensive investigation relating to the claims and the underlying events alleged in the Action, including: (i) analyzing the Company's filings with the U.S. Securities and Exchange Commission ("SEC"); (ii) analyzing, news reports and other

information concerning the underlying matters alleged in the complaint; (iii) analyzing the pleadings and other papers filed in the Securities Class Action, including the Court's order on the motion to dismiss in that case; (iv) researching the applicable law with respect with the claims asserted in the Action and the potential defenses thereto; (v) analyzing nonpublic documents produced to Plaintiff by Terex reflecting the Company's existing corporate governance and internal control structures; and (vi) researching the Company's corporate governance structures and developing and negotiating the governance and oversight reform package.

Plaintiff believes that the claims asserted in the Action have merit (although Defendants have denied any wrongdoing). Nonetheless, Plaintiff and Plaintiff's Counsel also recognize and acknowledge the significant risk, expense, and length of continued proceedings necessary to prosecute the Action through trial and appeal. Stip., ¶J. Plaintiff and Plaintiff's Counsel also have taken into account the uncertain outcome and the risk of any litigation, especially in complex cases such as the Action, as well as the difficulties and delays inherent in such litigation. Plaintiff and Plaintiff's Counsel are also mindful of the inherent problems of proving the violations asserted in the Action. After weighing the risks of continued litigation, Plaintiff and Plaintiff's Counsel determined that it is in the best interests of Terex and its stockholders that the Action be fully and finally settled in the manner and upon the terms and conditions set forth in the Stipulation, and that those terms and conditions are fair, reasonable, adequate, and confer substantial benefits upon Terex and Terex Stockholders. *Id.*

In sum, Plaintiff, by and through Plaintiff's Counsel, and the Defendants, by and through their counsel, and exercising their business judgment and mindful of their duties to stockholders,

have independently considered the Settlement and all agree that it is in the best interest of Terex and its stockholders.  Stip., ¶¶J.-K.  This weighs in favor of settlement approval.[5]

### B.    The Settlement Confers Valuable Benefits upon Terex and Falls Well Within the Range of Possible Approval

"[S]trong corporate governance is fundamental to the economic well-being and success of a corporation;" accordingly, courts have long "recognized that corporate governance reforms such as those achieved here provide valuable benefits for public companies."  *In re NVIDIA Corp. Derivative Litig*, Master File No. C-06-06110-SBA (JCS), 2009 U.S. Dist. LEXIS 24973, at *11-12 (N.D. Cal. Mar. 18, 2009); *see also Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 395 (1970) ("[A] corporation may receive a 'substantial benefit' from a derivative suit ... regardless of whether the benefit is pecuniary in nature."); *Maher v. Zapata Corp.*, 714 F.2d 436, 461 (5th Cir. 1983) ("[T]he effects of the suit on the functioning of the corporation may have a substantially greater economic impact on it, both long- and short-term, than the dollar amount of any likely judgment in its favor.").

Courts approve settlements supported by consideration in the form of corporate governance reforms "specifically designed to minimize the probability of violations of fiduciary duties and federal securities laws[.]"  *Cohn v. Nelson*, 375 F. Supp. 2d 844, 853 (E.D. Mo. 2005).  Among other benefits, such reforms make it "far less likely [that the corporation will] become subject to long and costly securities litigation in the future, as well as prosecution or investigation by regulators or prosecutors."  *Id*.; *see Pfizer Inc.*, 780 F. Supp. 2d at 342 (approving settlement of stockholder derivative action where the corporate benefits included "a

---

[5] While the Court need not address attorneys' fees until final approval, it bears mention that arm's-length fee negotiations receive similar deference.  *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) (negotiated fees strongly preferred) ("A request for attorney's fees should not result in a second major litigation.").

significantly improved institutional structure for detecting and rectifying the types of wrongdoing that have, in recent years, caused extensive harm to the company"); *Unite Nat'l Ret. Fund v. Watts*, No. 04-CV-3603 (DMC), 2005 U.S. Dist. LEXIS 26246, at *9 (D.N.J. Oct. 28, 2005) (non-monetary benefits support settlement where "the relief is intended to prevent future harm"). The Governance Reforms guaranteed by the Settlement confer this sort of substantial benefit here.

The Settlement provides for, *inter alia*, enhancements to the duties and responsibilities of the Chief Ethics and Compliance Officer, the Disclosure Committee and the Audit Committee. These Governance Reforms will help improve the Company's and the Board's oversight of the Company's public statements and compliance with the federal securities laws and will help ensure timely and accurate statements made by Terex to the investing public—issues at the heart of this litigation. The Settlement also requires that the duties and responsibilities of the Chief Ethics and Compliance Officer and the Disclosure Committee Charter be at all times publicly available on the Company's website, providing stockholder with greater transparency into the Company's operations, management and oversight. In addition, the Settlement requires amendments to the Governance Charter providing that the Chief Ethics and Compliance Officer (or General Counsel or other designee in his/her absence) shall provide a report on ethics and compliance matters at each regularly scheduled meeting of the Governance Committee, which must include a discussion of any material risks concerning the Company's regulatory compliance and the Chief Ethics and Compliance Officer's evaluation of and any recommendations for remedial action. This will further help to ensure Terex's compliance with the federal securities laws and other legal and regulatory requirements moving forward. Moreover, Terex will amend its Corporate Governance Guidelines to state that directors should visit a Company location at

least once per year, which will help to educate the directors regarding the culture and to provide them a better understanding of the business. Finally, the Settlement includes reforms designed to enhance Board independence and oversight, including by limiting the number of other boards on which directors may serve and implementing a formal process for considering rotation of Board committee chairs.

Taken together, the Governance Reforms will substantially enhance Terex's internal controls and Board oversight, will help ensure timely and accurate public statements and legal compliance moving forward, and will help prevent a recurrence of the type of alleged failures at issue in this case. The Settlement is an outstanding resolution for Terex and it positions the Company to reap the long-term benefits of strong corporate governance enhancements that will protect the Company from the type of harm alleged in this case in the future. Terex and the Individual Defendants acknowledge and agree that the Governance Reforms confer substantial benefits upon Terex and its stockholders. Stip., ¶3. Terex has agreed to maintain all of these governance measures for a minimum of four (4) years—a meaningful amount of time intended to ensure the Governance Reforms become embedded in the Company's policies, practices, and corporate culture, thus protecting against discontinuation of these Corporate Governance Reforms following the four-year period. Stip., ¶¶2, 5; *see also*, *e.g.*, *Cohn*, 375 F. Supp. 2d at 850 (finding that corporate governance measures which must be in place for no less than three years will "provide meaningful ways of avoiding the problems [the company] experienced in the recent past").

An evaluation of the benefits of settlement must be tempered by the recognition that any compromise involves concessions by all settling parties. Indeed, "inherent in compromise is a yielding of absolutes and an abandoning of highest hopes." *Milstein v. Werner*, 57 F.R.D. 515,

524-25 (S.D.N.Y. 1972). Here, the Settlement provides substantial benefits to Terex and its stockholders while eliminating numerous risks, costs, and burdens of litigation for all concerned, including the Company. Balanced against the delays, costs, and particularly the risks of attempting to secure additional benefits through further litigation and trial, the substantial benefits of the Settlement clearly fall within the range of possible approval as fair, reasonable, and adequate. *See Pfizer Inc.*, 780 F. Supp. 2d at 340.

While Plaintiff believes that the claims alleged in the Action are meritorious, continued litigation of the Action would be complex, costly, and of substantial duration. Indeed, significant risks would remain. Plaintiff would have to overcome these hurdles in the context of a stockholder derivative action, which is "notoriously difficult and unpredictable." *Maher*, 714 F.2d at 455.

Here, in particular, Plaintiff would first have to prevail on its motion to substitute in as the representative stockholder plaintiff in this Action. If Plaintiff were unsuccessful in that effort, the derivative claims brought on behalf of Terex likely would be dismissed for lack of derivative standing, and Terex would recover nothing. *See Lewis v. Anderson*, 477 A.2d 1040 (Del. 1984). Even if Plaintiff were successful on the substitution motion, Defendants undoubtedly would move to dismiss for failure to sufficiently allege that demand on Terex's Board would have been futile on the ground that a majority of Terex's Board members are independent. *See, e.g.*, Delaware Chancery Court Rules, Rule 23.1 ("The complaint shall … allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors … and the reasons for the plaintiff's failure to obtain the action or for not making the effort."); *Kamen v. Kemper Fin. Servs. Inc.*, 500 U.S. 90, 96 (1991) (demand futility requirement is satisfied only under "'extraordinary conditions'"); *Espinoza v. Dimon*, 790

F.3d 125 (2d Cir. 2015) (affirming dismissal of stockholder derivative complaint for failure to adequately plead demand futility). This would be a particular challenge for Plaintiff here, given that only four of the Company's nine current directors (i.e., less than half) are named as defendants in the Action. *See* https://investors.terex.com/investor-relations/governance/board-of-directors/default.aspx.

Even if Plaintiff cleared the pleading hurdle, significant questions would remain about whether Plaintiff could secure evidence sufficient to overcome motions for summary judgment predicated on the "business judgment rule," which affords directors the presumption that they acted on an informed basis and in the good faith belief that the actions taken were in the best interest of the company, *see*, *e.g.*, *In re Walt Disney Co. Derivative Litigation*, 907 A.2d 693, 746-47 (Del. Ch. 2005), *aff'd*, 906 A.2d 27 (Del. 2006), and the exculpation and indemnification rights granted to directors, absent a demonstration of intentional misconduct and disloyalty. *See* Del. Code Ann. Tit. 8, (corporations may exculpate directors from personal liability for damages except where they fail to act in good faith); *In re Lear Corp. S'holder Litig.*, 967 A.2d 640, 647-48 (Del. Ch. 2008) (where corporate charter contains Section 102(b)(7) provision, plaintiffs must plead a non-exculpated claim that the defendants knowingly breached duty of loyalty). Indeed, a derivative failure of oversight claim—as is at issue in this Action—"is possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment." *In re Caremark Int'l Inc. Derivative Litig.*, 698 A.2d 959, 967 (Del. Ch. 1996).

If Plaintiff overcame all of those hurdles, litigation would still be extremely complex, costly, and of substantial duration. Document discovery would need to be conducted, depositions would need to be taken, experts would need to be designated and expert discovery conducted. The Defendants' expected motions for summary judgment would have to be briefed and argued and a

trial would have to be held. Even if liability was established, the amount of recoverable damages would still have posed significant issues—including the fact that, here, the money used to settle the related Securities Class Action was paid by Terex's insurer, not the Company itself—and would have been subject to further litigation. *See In re Lloyd's Am. Trust Fund Litig.*, No. 96 Civ. 1262 (RWS), 2002 U.S. Dist. LEXIS 22663, at *61 (S.D.N.Y. Nov. 26, 2002) ("The determination of damages ... is a complicated and uncertain process, typically involving conflicting expert opinions. The reaction of a jury to such complex expert testimony is highly unpredictable.").

Moreover, a victory at trial is no guarantee that the judgment would ultimately be sustained on appeal or by the trial court. *See, e.g.*, *In re Apollo Grp., Inc. Sec. Litig.*, No. CV 04-2147-PHX-JAT, 2008 WL 3072731 (D. Ariz. Aug. 4, 2008), *rev'd & remanded*, No. 08-6971, 2010 WL 5927988 (9th Cir. June 23, 2010) (holding evidence insufficient to support jury verdict for stockholders of $277 million). Add to these post-trial and appellate risks, the difficulty and unpredictability of a lengthy and complex trial—where witnesses could suddenly become unavailable or the fact finder could react to the evidence in unforeseen ways—and the benefits of the Settlement become all the more apparent. *Grant v. Bethlehem Steel Corp.*, 823 F.2d 20, 24 (2d Cir. 1987) (affirming settlement where potential defenses presented the "possibility of 'a lesser or no recovery after trial'"). The Settlement eliminates these and other risks of continued litigation, including the very real risk of no recovery after several more years of litigation, while providing the Company and its stockholders substantial benefits. *In re Metro. Life Derivative Litig.*, 935 F. Supp. 286, 294 (S.D.N.Y. 1996) (unless proposed settlement clearly inadequate, approval preferable to lengthy and expensive litigation with uncertain results).

## VI. NOTICE TO TEREX STOCKHOLDERS SATISFIES THE REQUIREMENTS OF RULE 23.1(C) AND DUE PROCESS

Fed. R. Civ. P. 23.1(c) requires that the notice of a proposed shareholder derivative settlement be given to stockholders "in the manner that court orders." Notice in a derivative action must meet the due process requirement of being "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the [settlement] and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

Here, the Stipulation and proposed Preliminary Approval Order contemplate that no later than fourteen (14) business days after the entry of the Preliminary Approval Order, (a) Terex shall: (i) disclose the terms of Settlement through the filing of a Form 8-K with the SEC, which filing shall include a copy of the Notice and the Stipulation; (ii) publish the Summary Notice once in *Investor's Business Daily*; and (iii) post the Notice and the Stipulation on Terex's corporate website, which documents shall remain posted on Terex's corporate website through the Effective Date of the Settlement; and (b) Plaintiff's Counsel shall post the Notice and the Stipulation on Robbins Arroyo's firm website.

The proposed method of notice to stockholders here satisfies Rule 23.1 and due process standards in derivative actions brought by stockholders on behalf of public corporations. *See Arace v. Thompson*, No. 08 CIV. 7905 (DC), 2011 U.S. Dist. LEXIS 93105, at *10-11 (S.D.N.Y. Aug. 17, 2011) ("[T]he publication of the notice in the September 25, 2009 edition of the *Investor's Business Daily*—'a nationally-circulated business-oriented publication catering to investors'—sufficiently apprised Wachovia shareholders of the nature of the proposed settlement, the upcoming public hearing on the matter, and the opportunity to object.") (citing *Marsden v. Select Med. Corp.*, No. 04 Civ. 4020, 2005 U.S. Dist. LEXIS 714 (E.D. Pa. Jan. 18, 2005)); *see*

*also Metro.*, 935 F. Supp. at 294 n.10 (approving published notice of derivative settlement). Use of a Form 8-K together with publication in business periodicals and on company websites is the accepted practice in stockholder derivative actions. Personal notice is unnecessary because, unlike a stockholder class action, the settlement of a stockholder derivative action resolves claims belonging to, and secures a recovery for, the corporation, not individual class members. *See In re Rambus Inc. Derivative Litig.*, No. 5:06-cv-03513-JF, slip op., ¶8 (N.D. Cal. Oct. 30, 2008) (approving notice by filing on Form 8-K, Business Wire press release, and posting on company's website), Rifkin Decl., Ex. C; *In re: MoneyGram Int'l, Inc. Derivative Litig.*, No. 0:09-cv-03208-DSD-JJG, slip op., ¶3 (D. Minn. Apr. 1, 2010) (same), Rifkin Decl., Ex. D; *In re Converse Tech., Inc. Derivative Litig.*, No. 2:06-cv-01849-NGG-RER, slip op., ¶¶9-11 (E.D.N.Y. Apr. 6, 2010) (approving notice by filing on Form 8-K, publication in *The Wall Street Journal* and posting on company's website), Rifkin Decl., Ex. E; *In re Marvell Tech. Grp. Ltd. Derivative Litig.*, No. 5:06-cv-03894-RMW, slip op., ¶4 (N.D. Cal. May 21, 2009) (same), Rifkin Decl., Ex. F; *Wandel, et al. v. Brenneman, et al.*, No. 2006 Civ. 117491, slip op., ¶7 (Ga. Super. Ct. Apr. 3, 2008) (approving notice by filing on Form 8-K and publication in Investor's Business Daily), Rifkin Decl., Ex. G.

Additionally, the Notice is drafted in plain and easily understood language and clearly describes: the nature of the Action and the claims alleged therein; the terms of the proposed Settlement (including the attorneys' fees and expenses to be paid to Plaintiff's Counsel, subject to Court approval); the considerations that caused the Settling Parties to conclude that the Settlement is fair, reasonable, adequate, and in Terex's best interests; the procedures for objecting to the Settlement; and the date, time, and place of the Settlement Hearing. Stip., Ex. C. In addition, the Notice invites Terex Stockholders who seek additional information not only to

inspect the Stipulation and other documents filed with the Court, but also to contact the Settling Parties' counsel. As a result, the Notice is reasonably "calculated to apprise the parties of the terms of the proposed settlement and the options available in connection with the judicial proceeding." *In re Drexel Burnham Lambert Group Inc.*, 995 F.2d 1138, 1144 (2d Cir. 1993). The Court, therefore, approve the proposed method and form of Notice to Terex Stockholders.

## VII. PROPOSED SCHEDULE OF EVENTS

In connection with preliminary approval of the proposed Settlement, Plaintiff respectfully requests that the Court establish: (i) dates by which notice of the Settlement will be distributed to Terex stockholders; (ii) the date by which Terex stockholders may comment on the Settlement; and (iii) the date of a Settlement Hearing, at which the Court will consider whether final approval of the proposed Settlement should be granted. As set forth in the Preliminary Approval Order, Plaintiff proposes the following schedule:

| | |
|---|---|
| Filing of Stipulation and Notice along with a Current Report on Form 8-K with the SEC | 14 business days after the Court enters the Preliminary Approval Order |
| Summary Notice published in *Investor's Business Daily* | 14 business days after the Court enters the Preliminary Approval Order |
| The Company shall post the Notice and the Stipulation on Terex's corporate website | 14 business days after the Court enters the Preliminary Approval Order |
| Defendants' Counsel to file affidavit or declaration regarding publication and posting of Notice and Summary Notice | 10 calendar days before Settlement Hearing |
| Filing of Motion for Final Approval of Settlement | 45 calendar days before Settlement Hearing |
| Last day for stockholders to comment on the proposed Settlement | 21 calendar days before Settlement Hearing |
| Filing of Reply in support of Final Approval of Settlement | 7 calendar days before Settlement Hearing |

| Settlement Hearing Date | At least seventy (70) calendar days after entry of the Preliminary Approval Order |

## VIII. CONCLUSION

Given the substantial benefits the Settlement provides to Terex and Terex Stockholders, Plaintiff respectfully requests that the Court enter the proposed Preliminarily Approval Order, attached as Exhibit B to the Stipulation (Rifkin Decl., Ex. A), which: (i) preliminarily approves the proposed Settlement; (ii) approves the form and manner of publication and posting of the proposed Notice and Summary Notice; and (iii) schedules the Settlement Hearing.

DATED: July 31, 2019

Respectfully submitted by,

ROBBINS ARROYO LLP
BRIAN J. ROBBINS (ct28404)
FELIPE J. ARROYO (admitted *Pro Hac Vice*)
ASHLEY R. RIFKIN (admitted *Pro Hac Vice*)
SHANE P. SANDERS (*Pro Hac Vice* pending)

/s/ Ashley R. Rifkin
ASHLEY R. RIFKIN

5040 Shoreham Place
San Diego, CA 92122
Telephone: (619) 525-3990
Facsimile: (619) 525-3991
E-mail: brobbins@robbinsarroyo.com
farroyo@robbinsarroyo.com
arifkin@robbinsarroyo.com
ssanders@robbinsarroyo.com

LAW OFFICES OF DAVID RUBIN
DAVID RUBIN (ct10169)
600 Summer Street, Suite 201
Stamford, CT 06905
Telephone: (203) 353-1404
Facsimile: (203) 357-7208
E-mail: drubin@dwr-law.com

*Attorneys for Plaintiff*

1377089

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on July 31, 2019, a copy of foregoing Memorandum of Law in Support of Plaintiff's Unopposed Motion for Preliminary Approval of Settlement was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ Ashley R.. Rifkin
ASHLEY R. RIFKIN
5040 Shoreham Place
San Diego, CA 92122
Telephone: (619) 525-3990
Facsimile: (619) 525-3991
E-mail: arifkin@robbinsarroyo.com